IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:23-cr-55 |
| | ) | |
| v. | ) | Hon. Patricia Tolliver Giles |
| | ) | |
| POLINA L. PERELMAN, | ) | Sentencing: August 24, 2023 |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

Almost one year to the day, the defendant, Polina Perelman, attempted to smuggle into the United States wildlife products and cell cultures that she brought with her from Russia. She now comes before the Court for sentencing after having pled guilty to violating 18 U.S.C. § 545. The government has reviewed the Presentence Investigation Report (the "PSR"), which correctly calculates the total offense level to be 8 and the defendant's criminal history category to be I, resulting in a Guidelines range of 0 to 6 months in custody and 1 to 5 years of probation. For the reasons outlined below, the government respectfully asks that the defendant be sentenced to a term of probation and a fine. Such a sentence takes into account the Sentencing Guidelines, the 18 U.S.C. § 3553(a) factors, and the relevant statutory provisions. Together with the underlying conviction, it also emphasizes to members of the international science community and beyond that the laws of the United States must be followed even when they may appear cumbersome.

**I.     FACTUAL BACKGROUND**

The defendant, a Russian national and legal permanent resident in the United States, is a geneticist who holds a PhD from the Institute of Cytology and Genetics, located in Russia. PSR

¶¶ 20, 71.  Since September 2016, she has been a research scientist at the Institute of Molecular and Cellular Biology, a Russian-based company.  *Id.* ¶ 73.

On August 19, 2022, the defendant traveled from Russia to the United States through Dulles International Airport.  *Id.* ¶ 21.  As all travelers must, she filled out a Customs and Border Protection customs declaration form upon entering the United States.  *Id.*  Section 11(b) of the form asked whether the traveler has any "meats, animals, animal/wildlife products"; Section 11(c) asked the same of "disease agents, cell cultures, snails."  *Id.*  The defendant represented that she had neither category of items.  *Id.*

The defendant's declaration, however, was false.  *Id.*  During a baggage inspection, customs officers found a Styrofoam cooler labeled "Research Samples," which contained pieces of dry ice along with nine empty-appearing microcentrifuge tubes and 10 small vials with a yellowish substance.  *Id.* ¶ 23.  When asked about the tubes, the defendant informed a customs officer that the vials and tubes contained cell lines and DNA samples and that the nine microcentrifuge tubes contained varying amounts of a DNA buffer solution.  *Id.*  The defendant then stated that they contained samples of mostly mustelid (i.e., a diverse family of carnivorous mammals) DNA and other species, which she planned to have sequenced in the United States for her research in Russia.  *Id.*  The defendant did not have any supporting documentation for her samples.  *Id.*

When the customs agents confronted the defendant with the customs declaration form that she had filled out, the defendant said that she failed to check the box declaring her possession of wildlife products and cell cultures because she thought that doing so would result in her samples being seized and the customs agents asking her "unwanted questions."  *Id.* ¶ 25.  The defendant said that because the samples did not contain diseases or other harmful

2

substances, she did not feel the need to declare them. *Id.* The defendant also admitted that bringing the substances she was carrying required obtaining proper authorization from the United States government, but she stated that such a process was inconvenient and time intensive. *Id.* ¶¶ 26, 30.

The defendant's samples were seized and eventually tested. Of the 19 samples that the defendant attempted to bring into the United States, two contained biological material derived from endangered species protected by the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), 27 U.S.T. 1087, T.I.A.S. No. 8249 (July 1, 1975)—a multilateral treaty that provides a mechanism for regulating international trade in fish, plant, and wildlife species whose survival is considered threatened by trade. PSR ¶¶ 31, 2.

On April 24, 2023, the defendant pled guilty to a one-count criminal information charging her with smuggling goods into the United States, in violation of 18 U.S.C. § 545. PSR ¶ 2. She has remained on a personal recognizance bond since then with no issues reported by Pretrial Services. *Id.* ¶ 9.

## II.     APPLICABLE LAW & APPLICATION OF THE § 3553(a) FACTORS

As the Court knows, to determine an appropriate sentence, it "shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, "the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a).

As detailed in the defendant's PSR, the Sentencing Guidelines allow for a term of probation, which in this case, together with a fine, would fairly account for the § 3553(a) factors and constitute just punishment. As recounted by her current and former colleagues in the many letters of support submitted to the Court, the defendant has worked as a research scientist her whole career. Indeed, it was her academic and professional interests that led her to bring into the United States the cell lines and DNA samples, which she intended to use for her research.

The letters from the defendant's supporters stress that the material the defendant had in her luggage did not contain disease agents or other immediately dangerous material. The government appreciates that. However, we only know that now. Indeed, the discovery of the test tubes on August 19, 2022, prompted urgent calls from customs agents to the Centers for Disease Control and Prevention, the Department of Agriculture, and the U.S. Attorney's Office Duty Line, in an effort to ascertain whether the test tubes contained dangerous material. Only after the substances were tested by the U.S. Fish and Wildlife Service and after law enforcement officers conducted a thorough investigation into the defendant's representations, work, and research can we say that the defendant attempted to smuggle wildlife DNA and not something much more dangerous. This is key.

At the time that the defendant showed up at Dulles International Airport after boarding a flight from Russia[1] and customs officers found a container filled with test tubes, the customs officers had no way of knowing whether the defendant was transporting disease agents, weapons

---

[1] A country currently engaged "in an unjust war against Ukraine, committing atrocities at the largest scale of any armed conflict since the Second World War[.]" *Merrick B. Garland Delivers Remarks Following Meeting with Ukrainian Prosecutor General Andriy Kostin*, April 17, 2023, U.S. Department of Justice Office of Public Affairs, *available at* https://www.justice.gov/opa/speech/merrick-b-garland-delivers-remarks-following-meeting-ukrainian-prosecutor-general-andriy

of mass destruction, or other dangerous material.  Although the defendant told customs officials that she was not traveling with any harmful products, all those officials had to go off was the defendant's word and a false customs declaration form.

Such behavior is not only unlawful, it is dangerous.  It could pose a risk to the wellbeing and national security of the United States.  There are laws and regulations that dictate how animal material should be imported into the United States, and there are treaties such as CITES that provide a mechanism for regulating international trade in certain animal species.  The reason those laws exist is so that scientists like the defendant may lawfully transport substances meant to be researched without setting off alarms at a port of entry that disease agents or biological weapons may be present.  In fact, the defendant admitted that she was no stranger to these laws and regulations—she told customs officials that one of her previous labs had a full-time employee to handle the paperwork required to transport such substances.  The defendant's reasoning for making a false customs declaration was that she feared the additional scrutiny from customs officials would result in her samples being seized.

The laws of the United States may seem cumbersome to some, but they exist to protect the public from harm.  Lying on a customs declaration form may appear inconsequential if the materials being transported are deemed "not harmful" by those transporting them, but, as detailed above, there are serious consequences to breaking the law.  The defendant's sentence should serve as a deterrent not only to her, but also to others—including other members of the international scientific community—that the laws of the United States must be respected.  A term of imprisonment is not necessary in this case to achieve such a goal; a term of probation and a fine would be sufficient to accomplish the goals of sentencing.

## **CONCLUSION**

The discovery in the defendant's luggage of vials of unknown substances frozen in dry ice immediately triggered great concern among multiple U.S. agencies that the defendant's actions might constitute an attempt to smuggle into the country disease agents or other deadly materials. Had the defendant complied with the applicable regulations—about which she well knew—U.S. authorities could have met her at the airport with personnel possessing the skills necessary to evaluate the safety of her vials. The defendant's deliberate decision *not* to notify U.S. authorities of her import of the vials meant that when those materials were discovered by an alert customs officer, there was no one around with the requisite skills to evaluate the threat presented by the materials. As a result, various government agencies had to scramble to respond to the airport and to treat the substances with the greatest of care in case they *were* deadly.

Fortunately for everyone involved, the substances that the defendant attempted to smuggle did not pose a greater risk to the safety and health of the people of the United States. However, this does not excuse the defendant's behavior, especially in light of her knowledge of the rules and regulations governing the transport of biological materials for scientific research. Mere inconvenience does not justify breaking the law. The defendant's felony conviction accompanied by a fine and a term of probation will serve to demonstrate that.

Respectfully submitted,

Jessica D. Aber
United States Attorney

*[Continued on next page]*

        By:    */s/ Cristina C. Stam*
               Cristina C. Stam
               Gordon D. Kromberg
               Assistant United States Attorneys
               United States Attorney's Office
               2100 Jamieson Avenue
               Alexandria, Virginia 22314
               Tel: (703) 299-3700
               Fax: (703) 299-3982
               Cristina.stam@usdoj.gov
               Gordon.kromberg@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on August 17, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                                                  /s/
                                        Cristina C. Stam
                                        Assistant United States Attorney

\